IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SAFECO INSURANCE COMPANY OF
AMERICA,

      Petitioner,

vs.

KATIE MARES and MARIE SALAS,
Individually and as Personal Representative of
the Estate of Margarito Montoya,

      Respondents.

No. CIV 01-0960 PK/RLP

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes on for consideration of Petitioner, Safeco Insurance Company of America's Motion for Summary Judgment filed March 28, 2002 (Doc. 22) and a responsive pleading entitled "Respondent Mares' Opposition to Summary Judgment and Cross-Motion for Summary Judgment or Request for Continuance to Allow Discovery."[1]  Doc. 24.  Upon consideration thereof,

---

[1] Respondent Mares's responsive pleading is contrary to D.N.M. Administrative Order 92-88 (May 4, 1992), which prohibits certain "compound pleadings" including one responding to a motion for summary judgment combined with a cross-motion for summary judgment.  Given the legal nature of this dispute and the relatively few operative facts, however, the court will consider the responsive pleading.  The court notes, however, that Mares's reply brief in support of her cross-motion for summary judgment (Doc. 28) contains several new arguments that should have been contained in the cross-motion to enable

(continued...)

summary judgment will be granted in favor of the Petitioner.

(1) Background.  In this declaratory judgment action, 28 U.S.C. § 2201, Petitioner Safeco Insurance Company of America ("Safeco") seeks a declaration that it does not owe a duty to defend or indemnify its insured, Respondent Katie Mares ("Mares") under a homeowner's insurance policy.  The primary lawsuit against Mares arises from the death of Respondent Marie Salas's son, Margarito Montoya, who was killed while riding an all terrain vehicle ("ATV") belonging to Mares.  Montoya v. Mares, No.000-328-CV (Taos County, N.M. 8th Jud. Dist. Ct.) ("Taos County lawsuit").  The accident occurred during a birthday party held at Mares's home, but away from the Mares property.  Mares tendered the defense of the Taos County lawsuit to Safeco.  Safeco is defending her under a reservation of rights.  The court previously denied Mares' motion to dismiss this declaratory judgment action, while expressing no opinion on the merits of the coverage dispute.  Doc. 9.

(2) Summary Judgment Standard.  Summary judgment is appropriate when "there is no genuine issue as to any material fact . . . the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A movant is responsible for identifying the basis of its motion, which it may support with material demonstrating the absence of a genuine issue of material fact.  Celotex

---

[1](...continued)
Safeco to respond.

Corp. v. Catrett, 477 U.S. 317, 323 (1986). Here, Safeco as the movant relies upon the policy provisions, the underlying complaint, and an affidavit establishing that the accident did not occur on the insured's property.

In opposing a summary judgment motion, the non-movant may not rest upon her pleadings, but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-movant is not required to produce evidence in a form admissible at trial, but must respond with material other than the pleadings themselves, i.e. depositions, answers to interrogatories, admissions on file, and affidavits. Celotex, 477 U.S. at 324; Fed. R. Civ. P. 56(c).

In responding to Safeco's summary judgment motion and also seeking summary judgment, Mares relies upon affidavits and the policy provisions which she argues are ambiguous and therefore entitle her to coverage. She offers an affidavit of an expert on insurance coverage disputes; of course, to the extent that the expert makes legal conclusions about coverage or the duty to defend, it is inadmissible. Okland Oil Co. v. Conoco, Inc., 144 F.3d 1308, 1328 (10th Cir. 1998); see also Doc. 25, Ex. 2. (affidavit of Robert A. Epstein at ¶ 4 "My specialized knowledge allows me to conclude that there is potentially coverage for this occurrence and thus a duty to defend the homeowner."). Mares also contends that the court should defer ruling on the summary judgment motion pending additional discovery and has provided a Fed. R. Civ. P. 56(f) affidavit.

Id. Ex. 1.

A court considers all evidence and reasonable inferences therefrom in the light most favorable to the non-movant; however, that material must contain probative evidence that would allow a trier of fact to find in favor of the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). Disputes about immaterial facts will not preclude summary judgment. Id. at 248.

(3) Rule 56(f) and Delaying Summary Judgment. Mares argues that if the court is not inclined to grant summary judgment in her favor, it should deny Safeco's summary judgment or defer ruling in the absence of some discovery. According to Mares, she should be allowed to conduct discovery and review Safeco's claim file including the results of any investigations conducted by Safeco in anticipation that the information will provide additional grounds to oppose Safeco's summary judgment motion. Doc. 25, Ex. 1 at ¶¶ 13-16, Ex. 2 at ¶ 9.

Without question, summary judgment is not appropriate "where the nonmoving party has not had the opportunity to discover information essential to [her] opposition," Anderson, 477 U.S. at 250 n.5, however, a motion for summary judgment may be filed twenty days after an action is commenced. Fed. R. Civ. P. 56(a). This action has been pending for several months, and the Taos County lawsuit since October 2000. Formal discovery is not a prerequisite, and a party seeking the protection of Rule 56(f) must identify the probable facts available and

the steps taken to gather such facts. Price ex rel. Price v. Western Resources, Inc., 232 F.3d 779, 783 (10th Cir. 2000).

Here, Mares has notice from the summary judgment motion of what Safeco relies upon, including the results of its investigation into where the accident occurred. Her Rule 56(f) presentation contained in her cross-motion does not explain how additional discovery will enable her to oppose the operative facts contained in the motion. In her reply to Safeco's response to her cross-motion, Mares' counsel attempts to remedy this lack of specificity by arguing that various internal documents of Safeco may demonstrate that it has taken inconsistent positions, in particular "claims administration documents explaining the full extent of coverage; other claims files involving accidents with ATVs occurring off the insured location that show coverage was honored; underwriting files which reveal an inclusion of this type of risk within its calculations, and; testimony from Safeco employees that illustrate or support the view that the policy language is intended, or expected to provide coverage." Doc. 28 at 6-7. Apart from including this list in a reply brief, this presentation by counsel is unverified, does not contain any basis to conclude it is likely that such information exists, and does not indicate what steps have been taken to obtain such information. See Committee for First Amendment v. Campbell, 962 F.2d 1517, 1522 (10th Cir. 1992). Moreover, given the undisputed operative facts, resolution of this dispute is one of law.

(4) <u>Principles of Interpretation of Insurance Contracts.</u> Several well established principles guide a court's interpretation of an insurance contract. Insurance contracts are construed as a whole and like other contracts. <u>Rummel v. Lexington Ins. Co.</u>, 945 P.2d 970, 976 (N.M. 1997). "Ambiguities arise when separate sections of a policy appear to conflict with one another, when the language of a provision is susceptible to more than one meaning, when the structure of the contract is illogical, or when a particular matter of coverage is not explicitly addressed by the policy." <u>Id.</u> An ambiguity is construed against the insurer. <u>Id.</u> at 977.

Exclusions must be clearly expressed in the policy, but when policy language is clear and unambiguous, a court must apply that language. <u>Truck Ins. Exchange v. Gagnon</u>, 33 P.3d 901, 903 (N.M. Ct. App.), <u>cert denied</u>, 36 P.3d 953 (N.M. 2001). Although New Mexico allows extrinsic evidence to determine whether an ambiguity exists, "a party's statements of unilateral, subjective intent, without more, are insufficient to establish ambiguity in light of clear contract language." <u>Ponder v. State Farm Mut. Auto Ins. Co.</u>, 12 P.3d 960, 965 (N.M. 2000).

(5) <u>The Duty to Defend.</u> The duty to defend is broader than the duty to indemnify. In deciding whether an insurer is required to defend, a comparison between a third-party complaint and coverage afforded under the policy is required. <u>Bernalillo County Deputy Sheriffs Assn. v. County of Bernalillo</u>, 845

P.2d 789, 791 (N.M. 1992). "If the allegations of the complaint clearly fall outside the provisions of the policy, neither defense nor indemnity is required." Id. The New Mexico Court of Appeals also determined that "an insurance company is required to conduct such an investigation into the facts and circumstances underlying the complaint against its insured as is reasonable given the factual information provided by the insured or provided by the circumstances surrounding the claim in order to determine whether it has a duty to defend." G & G Servs., Inc. v. Agora Syndicate, Inc., 993 P.2d 751, 757 (N.M. Ct. App. 1999), cert. quashed, 10 P.3d 844 (N.M. 2000). If the complaint and any necessary investigation of the facts indicate that the matter falls outside the policy coverage, there is no duty to defend. Martin v. West Am. Ins. Co., 993 P.2d 763, 766 (N.M. App. 1999).

(6) Pertinent Policy Provisions. The policy provides an insuring clause:

LIABILITY LOSSES WE COVER

If a claim is made or a suit is brought against any insured for damages because of bodily injury or property damage caused by an occurrence to which this coverage applies, we will:

1. pay up to our limit of liability for the damages for which the insured is legally liable; and

2. provide a defense at our expense by counsel of our choice even if the allegations are groundless, false or fraudulent.
. . . .

Doc. 23, Ex. 1 at 13. It then provides an exclusion pertaining to claims arising

out of the ownership and use of motorized land vehicles, with an exception to the exclusion:

> LIABILITY LOSSES WE DO NOT COVER
> 1. Coverage E – Personal Liability and Coverage F – Medical Payments to Others do not apply to bodily injury or property damage:
> . . . .
> e. arising out of the ownership, maintenance, use, loading or unloading of:
> . . . .
> (2) motorized land vehicles, including any trailers, owned or operated by or rented or loaned to any insured.
>
> You have coverage for the following:
> . . . .
> (b) a motorized land vehicle designed for recreational use off public roads, not subject to motor vehicle registration, licensing or permits and:
> (i)   not owned by any insured; or
> (ii)  owned by any insured, while on an insured location

Id. at 13-14. The policy defines "insured location" in pertinent part as "the residence premises" and "that part of any other premises, other structures and grounds, used by you as a residence and which is shown in the Declarations. Id. at 21. The residence premises listed on the declarations sheet is "#1 CALLE VISTA, RANCHOS DE TAOS, NM 87557." "Insured location" also includes land owned by or rented to any insured, a temporary unowned residence of the insured, any part of premises occasionally rented to the insured for other than business purposes, and cemetery plots or burial plots of the insured. Id.

Finally, the policy contains an exclusion concerning entrustment,

supervision and negligence claims:

> f. arising out of:
> (1) the entrustment by any insured to any person;
> (2) the supervision by any insured of any person;
> (3) any act, decision or omission by any insured;
>  . . . .
> with regard to any aircraft, motorized land vehicle or watercraft which is not covered under Section II [Liability Coverages] of this policy.

Id. at 14.

(7) The collision that killed Margarito Montoya occurred while he was operating "an ATV owned by Ms. Mares on Espinoza Road and off road in the general vicinity of the Mares' home." Doc. 23, Ex. 2, ¶ 8; see also id., Ex. 2, ¶ 11 ("The collision occurred on or near Espinoza Road, a public roadway."); id. Ex. 3 (insurance investigator's affidavit). The collision did not occur on Mares' property–that fact is undisputed. Doc. 23 at 4 (fact no. 5); Doc. 25 at 1 ("Mares does not dispute the facts asserted by Safeco in its Motion for Summary Judgment."). This is not a case where the dispute is about whether the term "insured location" is sufficiently broad to encompass the accident site. See Safeco Ins. Co. of Am. v. Clifford, 896 F. Supp. 1032 (D. Ore. 1995); Nationwide Mut. Ins. Co. v. Prevatte, 423 S.E.2d 90 (N.C. Ct. App. 1992).

(8) Safeco argues that because the accident did not occur on an insured location, there is no coverage for personal liability, medical payments to others, or the negligent entrustment and negligent supervision claims. See State Automobile Mut. Ins. Co. v. Hoyle, 415 S.E.2d 764, 767 (N.C. Ct. App. 1992)

(interpreting "owned by an insured on an insured location" to require use be on an insured location; no coverage for go-cart accident on a public street).

(9) Mares argues that "while on an insured location" is susceptible to more than one meaning, and does not necessarily require that the bodily injury occur on the insured's premises for there to be coverage. Doc. 25 at 4. She argues that the phrase covers all conduct occurring on the insured location, including Margarito Montoya's taking possession of the ATV while Mares was on the insured location. In essence, her argument is that the exception covers all of her conduct related to the ATV while on an insured location. She contends that the reasonable expectations of the insured require that the phrase must be interpreted to provide coverage. For support, she relies upon a majority opinion in <u>United Servs. Auto Ass'n v. Vogel</u>, 733 So.2d 401 (Ala. Ct. Civ. App. 1998), and <u>Meister v. Utica Mut. Ins. Co.</u>, 573 So.2d 128 (Fla. Dist. Ct. App. 1991) (per curiam). In <u>Vogel,</u> the majority determined that the phrase "owned by an insured and on an insured location" can be reasonably interpreted to refer not only to the location where the motorized conveyance is *used*, but also to where the conveyance is *stored or kept*." 733 So.2d at 404.

The <u>Vogel</u> majority relied upon a construction of the same language in <u>Meister</u>:

> While it is true that one may reasonably construe the policy as requiring that the ATV be on an insured location at the time of the accident, we cannot say it is the only interpretation which may

> reasonably be drawn from the policy language. As appellant correctly points out, an insurer may well decide to underwrite the risks associated with storage of an ATV on the premises but not as to ATVs housed or garaged by third parties. In fact, to hold otherwise would be to render coverage for ATVs illusory, inasmuch as except only in the rarest of cases would one expect an insured to actually operate an ATV "on the insured location" as that term is defined in the policy.

573 So.2d at 130. While Vogel and Meister appear to be on point, there is an important difference: the policy in this case plainly envisions coverage "while" or "during the time that," Webster's Ninth New Collegiate Dictionary 1343 (1991), the insured-owned vehicle is on an insured location. Again, the phrase is "owned by any insured, while on an insured location." The policies in Vogel and Meister did not contain the word "while" and thus the policy here is more specific.

Moreover, the court is persuaded that to interpret "owned by any insured, while on an insured location," to mean "owned by any insured, provided the vehicle is stored or kept on an insured location," is not a reasonable interpretation of the policy, depends upon finding ambiguity where none exists, and expands coverage beyond the language of the policy. See DaCosta v. Vermont Mut. Ins. Co., No. C95-00126, 1997 WL 778660 at *2 (Mass. Superior Ct. Dec. 2, 1997) (interpreting "owned by an insured and on an insured location"); Vogel, 733 So.2d at 405 (Thompson, J. dissenting). Just as ownership of the vehicle must be determined at the *time of the accident*, so too must whether the accident occurred on an insured location. If those conditions are not

satisfied, the broad exclusion for bodily injury and property damage "arising out of the ownership, maintenance, use, loading, or unloading of . . . motorized land vehicles" applies. Likewise, if the motorized land vehicle is not covered at the time of the accident, there is no coverage for any entrustment or supervision claims by the express terms of the policy.

(10) Mares also argues that claims of negligent entrustment and negligent supervision are separate actionable claims for which Safeco has a duty to defend. The basis for the position is that the alleged negligence happened on her insured location and that the policy provides a broad grant of coverage. Of course, the grant is conditioned on coverage applying, and following the grant of coverage are two exclusions from coverage that apply here.

Mares's argument is that negligent entrustment or negligent supervision claims arise out of the personal conduct of the insured, independent of any use of the motor vehicle, consequently such exclusions do not bar coverage. Mares relies upon two Tenth Circuit diversity cases, Milbank Ins. Co. v. Garcia, 779 F.2d 1446 (10th Cir. 1985) and Douglass v. Hartford Ins. Co., 602 F.2d 934 (10th Cir. 1979), applying Colorado law so holding. See also United Fire & Cas. Co. v. Day, 657 P.2d 981 (Colo. Ct. App. 1982). She also relies upon Upland Mut. Ins., Inc. v. Noel, 519 P.2d 737 (Kan. 1974), and Republic Vanguard Ins. Co. v. Buehl, 204 N.W.2d 426 (Minn. 1973).

Insofar as the Tenth Circuit diversity cases, the Colorado Supreme Court

would later reject this argument and hold that negligent entrustment of a vehicle necessarily arises from the ownership, operation or use of a vehicle and that the exclusion for conduct arising out of such ownership, operation or use of a vehicle was unambiguous. Northern Ins. Co. of New York v. Ekstrom, 784 P.2d 320, 323 (Colo. 1989) (overruling United Fire & Cas. v. Day, 657 P.2d 981 (Colo. Ct. App. 1982)); see also All American Ins. Co. v. Burns, 971 F.2d 438, 444 (10th Cir. 1992) (noting Northern Ins. Co.). The Colorado Court of Appeals recently rejected an argument similar to the one here. The insureds' assignee argued that the insureds' negligence (in failing to secure a go-cart) on the insured location defeated an automobile exclusion where the go-cart accident occurred on a public roadway. Pike v. Am. States Preferred Ins. Co., No. 00CA0400, 2002 WL 282494 at *3 (Colo. Ct. App. Feb. 28, 2002). The court held that the accident occurred off an insured location and the alleged negligence occurring immediately prior could not change this. Id.; accord Wright v. Am. States Ins. Co., 765 N.E.2d 690, 697 (Ind. Ct. App. 2002) (driver's use of van was efficient and predominating cause of injuries, automobile-use exclusion applied because without use of the van there would be no lawsuit); see also 7A Appleman, Insurance Law & Practice (Berdal ed.) (2002 Cum. Supp. at 73) ("On the ground that coverage turns on the cause of the injury, rather than the legal theory asserted against the insured, a number of courts have held that negligent entrustment claims are precluded by the policy's automobile exclusions."); id. at

-13-

76-77, listing cases. Additionally, the older cases relied upon by Mares deal with general automobile exclusions; here there is not only such an exclusion, but also a specific exclusion for entrustment, supervision, and negligence claims. See Owens v. Continental Ins. Co., No. 99-3201, 2000 WL 703133 at * 6 (10th Cir. May 30, 2000) (distinguishing Upland Mut. Ins., Inc. v. Noel, 519 P.2d 737 (Kan. 1974), on this basis). Thus, the theories of liability advanced in the underlying lawsuit, to the extent they result in occurrences, are addressed by this policy and coverage is excluded.

(11) In her reply brief, Mares argues that the policy is ambiguous as a matter of law because she had liability coverage while the ATV was on her property and that such coverage for her alleged negligence could not vanish into thin air merely because the ATV was driven off the property. Doc. 28 at 2-5. According to Mares, the language contained in the exception to the exclusion results in a retroactive repeal of coverage already granted. As such, the language is irreconcilable with the insuring clause and is ineffective. See Knowles v. United Servs. Automobile Ass'n, 832 P.2d 394, 398-99 (N.M. 1992); Federal Ins. Co. v. Century Federal Sav. & Loan Ass'n, 824 P.2d 302, 309 (N.M. 1992).

The court is not persuaded. First, this argument ignores that the insuring clause insures for damages "caused by an occurrence to which this coverage applies." "'Occurrence' means an accident, including exposure to conditions which results in a. bodily injury; or b. property damage; during the policy

-14-

period." Doc. 23, Ex. 1 at 21. Here, the occurrence or accident occurred off the insured location; this fact in no way diminishes the coverage granted for such an accident on an insured location. Second, the fact that Mares may have had a duty with respect to Margarito Montoya or may be found to be the proximate cause of Margarito Montoya's injuries and death cannot negate the clear exclusions in the policy. While it is true that exclusions are construed against the insurer, when such exclusions are clear, they will be enforced even though perils may exist for which there is no coverage. New Mexico Physicians Mut. Liability Co. v. LaMure, 860 P.2d 734, 737-38 (N.M. 1993). Third, Mares's interpretation would nullify any territorial limitations on coverage; essentially elevating the theory of liability over policy provisions that contemplate coverage based on where the accident occurred.

NOW, THEREFORE, IT IS ORDERED, ADJUDGED and DECREED that Safeco Insurance Company of America's Motion for Summary Judgment filed March 28, 2002 (Doc. 22) is granted and Respondent Mares' Cross-Motion for Summary Judgment or Request for Continuance to Allow Discovery filed October 26, 2001 (Doc. 24), is denied.

DATED this 16th day of May 2002, at Santa Fe, New Mexico.

_____
Paul Kelly, Jr.
United States Circuit Judge
Sitting by Designation

Counsel:

James H. Johansen and Christopher P. Berkheimer, Butt Thornton & Baehr PC, Albuquerque, New Mexico, for Petitioner.

Ron Morgan, Morgan Law Office, Limited, Albuquerque, New Mexico, for Respondent.